UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-20155-RUIZ/TORRES(s)

UNITED STATES OF AMERICA

vs.

DIEGO SANUDO SANCHEZ CHOCRON.
_____/

**DIEGO SANCHEZ'S MOTION TO EXCLUDE 404(b) EVIDENCE; RENEWED MOTION TO SEVER; AND REQUEST FOR HEARING**

The current indictment is an impenetrable labyrinth of allegations, regulations, and theories. It was always hard to understand how the Government planned to put on its case in "less than two weeks" as it has repeatedly told this Court. Now, shortly before trial, and only because the Court ordered disclosure of any anticipated 404(b) evidence, the Government has filed a sprawling 16 page "Notice," detailing 5 different areas of other crime evidence that will result in complete confusion for our jury. One area, described as "other crimes Defendants engaged in to carry out the scheme and generate proceeds from the scheme," lists "a host of other serious crimes" that have not been charged, but that the Government wants to introduce, including bank fraud, identity theft, EKRA, and more. All we need now is the kitchen sink. The Government's intention is clear – throw every possible wet noodle allegation against the jury box with the hope that something sticks. Putting aside that the proposed 404(b) evidence will certainly overrun the two weeks that the Government estimated, it is not admissible on several grounds, many of which are

being briefed by our co-defendants, which we adopt here. We raise this additional point:

The Government's first noticed area – "that IGX employed the same scheme and people to generate orders for laboratory testing as Defendants Perez-Paris, Caskey, Palacios, and Co-Conspirator Hermesman did for other laboratories" – does not apply to Diego Sanchez and is therefore inadmissible as it relates to him and should be excluded. If the Court is going to admit this evidence, then we renew our motion for severance.

Federal Rule of Evidence 404(b) provides that evidence of other bad acts are not admissible absent (1) a proper purpose, (2) that the prior bad act occurred **and that the defendant was the actor**; and (3) that the probative value of introducing the evidence outweighs any prejudicial effect the evidence might have. *United States v. Troya*, 733 F.3d 1125 (11th Cir. 2013); *United States v. Cancelliere*, 69 F.3d 1116 (11th Cir. 1995). Here, the government, which bears the burden, cannot meet any of the three prongs (as demonstrated by our co-defendants). *See Huddleston v. United States*, 485 U.S. 681, 689 (1988) (the government must adduce enough reliable evidence to allow the jury to "reasonably conclude that the act occurred and that the defendant was the actor."). Because other-act evidence often invites the jury to draw improper inferences about the accused's character, the inquiry "is not a simple evidentiary one, but rather goes to the fundamental fairness and justice of the trial itself." *United States v. Burkhart*, 458 F.2d 201, 205 (10th Cir. 1972).

As to Diego Sanchez, there is no proper purpose for admitting the prior lab evidence, he was not the actor, and any probative value is certainly outweighed by the prejudicial effect. In an effort to get around these issues, the Government puts forward a strange theory about why the group brought in Diego Sanchez – the Government says that they brought him in "because of his experience in finance and investing in cryptocurrency arbitrages as they wanted to invest the laboratory's revenue in cryptocurrency." Notice at 5. Assuming there is any truth to this, it does not explain why the alleged bad acts at the prior lab, of which Diego Sanchez knew absolutely nothing and was not a participant, is relevant or admissible as to him. To admit this evidence against Diego Sanchez, there must be sufficient proof that **the defendant *committed* the act**." *United States v. Holt*, 777 F.3d 1234, 1266 (11th Cir. 2015) (citing *United States v. McNair*, 605 F.3d 1152, 1203 (11th Cir. 2010). Even under the Government's convoluted theory, there is absolutely no evidence that Diego committed the prior bad act.

The evidence of the prior labs is not necessary to tell the story of the alleged fraud at IGX. Either there was fraud at this lab or there was not. That is why the prior lab evidence is properly classified as 404(b) evidence as it is not required to tell the story in the Indictment.

Whether it comes in against the co-defendants, it certainly should not come in as to Diego Sanchez as he was not involved in any prior lab and did not know about any supposed illegal conduct at other labs. If a jury is permitted to hear this evidence, then the jury will conclude that IGX was engaged in illegal conduct. Diego Sanchez,

as an owner, will surely be swept up in it. There is no way that a jury will be able to put aside the Government's alleged origin story of IGX when considering Diego Sanchez's culpability.

If the Court plans on admitting this evidence, then we renew our motion to sever. In *United States v. Danzey*, the Second Circuit found that the denial of severance was prejudicial error where the case against one defendant was close, and the introduction of other crimes evidence related to the co-defendant had a significant spillover effect. The court emphasized that "similar act evidence must be particularly scrutinized for its prejudicial spill-over effect on a codefendant." *United States v. Danzey*, 594 F.2d 905, 919 (2d Cir. 1979).

The other bad act evidence noticed by the government is similarly inadmissible. In addition to the evidence of the prior labs, which Diego was not involved in, the Government seeks to introduce evidence of medically unnecessary respiratory pathogen panel tests, telemarketing campaigns, "other crimes" used to carry out the scheme, and audits by the Government and private entities. None of these extrinsic allegations are inextricably intertwined with the allegations in the Indictment, each is for the sole purpose of propensity, and any probative value of the extrinsic bad acts is substantially outweighed by undue prejudice.

Evidence regarding the respiratory pathogen tests and the telemarketing campaign is not inextricably intertwined with the Indictment – it does not pertain to the chain of events, explain context, motive or set-up, and it is not necessary to complete the story of the crime for the jury. *See United States v. McClean,* 138 F.3d

1398, 1403 (11th Cir. 1998), quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985). The Government can simply drop the evidence from its case and the story remains exactly the same. But the Government seeks to admit the evidence so it can argue that because the lab processed unnecessary pathogen panel tests and engaged in telemarketing campaigns, it therefore must have also engaged in fraud. It is pure propensity evidence.

The Government also seeks to admit "other crimes," including but apparently not limited to, delivery of a misbranded device, bank fraud, aggravated identity theft, and uncharged kickbacks. The Government fails to explain how any of these uncharged crimes are inextricably intertwined, as again, the Government can tell the story of the Indictment and simply omit these uncharged alleged acts. But the Government does not want to omit these uncharged acts from its story because it wants to argue that because Diego Sanchez committed all of these other crimes, he must have necessarily committed the ones charged. It is the exact type of propensity evidence that Rule 404(b) prohibits.

Finally, the Government seeks to introduce evidence of payors's audits. It is entirely unclear how a payor's opinion and investigation of IGx's billing could possibly be relevant or admissible. The audits would simply introduce the improper opinions of auditors about billing regulations and practices – but the evidence is not related to the charged offenses.

While the Government seeks to introduce all of this evidence for inadmissible purposes, its biggest hurdle is that any probative value of the evidence is

substantially outweighed by its prejudice. Diego Sanchez will be forced to defend against every single allegation, far beyond what is alleged or relevant to the trial. Diego will need to present evidence to counter the extrinsic allegations about respiratory pathogen panels, telemarketing campaigns, delivery of misbranded devices, bank fraud, aggravated identity theft, uncharged kickbacks, and audits. What the Government claimed would be one two-week trial will turn into multiple trials within a trial and will require months of the Court's time. The jury will lose focus on the actual charged allegations – and instead will need to sift through an unspecified number of crimes that were not charged in this Indictment. It will be impossible to defend against the actual allegations charged when the Government has thrown every single possible bad act into its case.

      Because the noticed acts are not inextricably intertwined, are pure propensity evidence, and will require a months-long trial that will only confuse a jury about the actual issues, the Court should exclude the Government's Rule 404(b) evidence.

\*   \*   \*

Mr. Sanchez requests that the Court hear oral argument regarding the Rule 404(b) argument before making a determination about Mr. Sanchez's renewed motion to sever.

Respectfully submitted,

**MARKUS/MOSS PLLC**
40 N.W. Third Street, PH1
Miami, Florida 33128
Tel:   (305)   379-6667
markuslaw.com

By:   /s/ David Oscar Markus
      David Oscar Markus
      Florida Bar Number 119318
      dmarkus@markuslaw.com

      /s/ Lauren Field Krasnoff
      Lauren Field Krasnoff
      Florida Bar Number 0086951
      lkrasnoff@markuslaw.com
